UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                        :

BRUCE JONES, JR.,
                        :

          Plaintiff,                    OPINION & ORDER

                        :

         -against-                 18 Civ. 8035 (GWG)

                        :

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,                  :

          Defendant.         :
--------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     Plaintiff Bruce Jones, Jr. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). Both Jones and the Commissioner move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons stated below, Jones's motion is denied and the Commissioner's motion is granted.

I. <u>BACKGROUND</u>

    A. <u>Procedural History</u>

     Jones filed his application for a period of disability insurance benefits ("DIB") on February 14, 2015, alleging a disability onset date of January 1, 2013. <u>See</u> Certified

---

[1] <u>See</u> Notice of Motion for Judgment on the Pleadings, filed Apr. 17, 2019 (Docket # 19); Plaintiff's Memorandum of Law in Support of his Motion for Judgment of the Pleadings, filed Apr. 17, 2019 (Docket ## 20 and 20-1) ("Pl. Mem."); Notice of Cross-Motion, filed June 20, 2019 (Docket # 21); Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, filed June 20, 2019 (Docket # 22) ("Def. Mem."); The Plaintiff's Reply to the Defendant's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings, filed July 8, 2019 (Docket # 23) ("Pl. Reply").

Administrative Record, filed Dec. 12, 2018 (Docket # 13) ("R."), 106, 190-95. Jones later

modified his alleged onset date to January 12, 2012. R. 288. The Social Security Administration

("SSA") denied Jones's application on May 12, 2015. R. 108-15. Jones requested a hearing

before an administrative law judge ("ALJ") to review the denial, R. 116, which occurred on

March 31, 2017, R. 58-92. In a written decision dated July 18, 2017, the ALJ found that Jones

was not disabled within the meaning of the Act. R. 15-28. Jones requested that the Appeals

Council review the ALJ's decision, and on July 3, 2018, the Appeals Council denied Jones's

request for review. R. 1-6. Jones then timely filed this action. See Civil Complaint, filed Sept.

4, 2018 (Docket # 1).

   B. The Hearing Before the ALJ

   Jones's hearing took place on March 31, 2017, in White Plains, New York, before ALJ

Robert Gonzalez. R. 58. Jones appeared and testified in person and was represented by his

attorney, Scott Goldstein of the firm Ouimette, Goldstein, & Andrews, LLP. R. 60, 129-30.

Also present and testifying was vocational expert ("VE") Lanell Hall. R. 60, 282-83.

   Jones testified that he was 35 years old, had completed one year of college, and had not

worked since January 2012. R. 61-62. However, he was looking for part-time work as a

receptionist or a position similar in order to receive benefits from workers compensation. R. 62-

64. Jones was receiving around $797 biweekly in workers compensation. R. 66. Jones testified

briefly regarding his work experience. For several years, he worked in security at the Newburg

City School District. R. 73. Jones took a state examination to become a security officer. R. 73-

74. In 2003, Jones worked at a grocery store warehouse as a "selector" — in that role, Jones

would "basically . . . pick up heavy object[s] and put them on a pallet" and load the objects.

R. 84. Jones did not remember the weights of the objects in terms of actual pounds, but recalled

that he would load cases of water, which was the example Jones thought of as the "heaviest thing" he lifted.  R. 85.

Jones testified regarding hip pain and the left hip replacement procedure he underwent in May 2013.  R. 66.[2]  After the procedure, he began treating with Dr. Marc Levinson for pain management and was prescribed Oxycodone for pain and Duloxetine for depression.  R. 67-68. Jones did not want to discuss side effects of the medications because he found it to be embarrassing.  R. 67.  Jones also testified that he was being treated by his surgeon, Dr. Scott Marwin, who prescribed anti-inflammatories, which only sometimes help with the pain.  R. 68. Before seeing Dr. Levinson, Jones was treated by Dr. Bachar,[3] who prescribed Percocet for pain, although Jones stated that he thought he "didn't need them" at the time and tried to manage his pain without the medication.  R. 69-70.  Jones still has "shooting pain" in his hip that runs down his leg, radiating from his left hip to his right hip and lower back.  R. 69.  Jones has not received any official treatment for back pain from any doctor, and Jones acknowledged that "[e]verying seems to be revolving around [the] left hip."  R. 69.  Jones testified that the pain in his hip and back is constant, and typically is at an eight on a scale of "zero to ten . . . , [with] ten being . . . very severe."  R. 77.  Jones has not had any hospitalizations aside from when he went to the hospital for his hip replacement.  R. 73.

Jones also testified regarding his psychologist, Dr. Martin Ogulnick.  Although Jones acknowledged taking Duloxetine for depression, R. 67-68, he could not remember when he started taking the medication, R. 71.  In response to a question regarding his typical mood, Jones

[2]  Jones's hip pain stems from an injury he sustained while working as a security guard at a middle school in September 2010.  See R. 20-21, 916.

[3]  The hearing transcript recorded the spelling of the doctor's name as Dr. "Burchar" but reference is presumably being made to Dr. Jean A. Bachar.  See R. 26.

stated: "I just feel like my life is over." R. 79. He has difficulties concentrating due to the pain, has racing thoughts, and communicates these concerns to Dr. Ogulnick. R. 79-80.

Jones then testified regarding his daily routine. He only sleeps "a couple hours" because he moves around "trying to get comfortable" during the night and is "miserable." R. 78. He naps during the day due to exhaustion, and, if he is "really hurting," he tries to take medication and nap after dropping his daughter off at school. R. 78. However, Jones only naps around one to two hours because he gets "stiff" and needs to move. R. 79. Jones uses a cane for fear of falling, and uses it in the house only sometimes because he uses the walls, a table, a chair, or the bathroom sink for balance. R. 80. He walks at a "[s]low" pace and uses a cane out of the house even on level ground; on uneven surfaces, Jones goes even slower to make sure he does not fall. R. 80. He also tries to avoid stairs, and stated that it is "very difficult" if he has to climb stairs. R. 81. Jones cannot do any "big shopping" but can shop for smaller items such as eggs or milk. R. 81. He does not take public transportation or handle any finances, R. 81, but he can drive a car on his own, R. 82. Jones spends most of the day sitting in a "regular chair." R. 82.

The ALJ then took testimony from the VE. The VE classified Jones's past work as (1) "security guard," which, pursuant to the Department of Labor's Dictionary of Occupational Titles ("DOT") was semiskilled, light work, and performed at the light exertion level; and (2) "store's laborer," which was unskilled, medium work, and performed at the medium exertion level. R. 85. The ALJ asked the VE

> to assume a hypothetical person the claimant's age, education and work history. I want you to further assume the person has a residual functional capacity to engage in a full range of sedentary exertional work as it's defined in the [DOT] except that the person has the following additional limitations: The person can occasionally stoop; the person can occasionally climb and descent stairs; the person cannot climb ladders, ropes or scaffolds; the person cannot crouch and cannot crawl and cannot kneel; the person cannot work at unprotected heights; the person must use a cane to ambulate; and the person can understand, remember and carry out simple work, and could adapt to routine work place

4

changes, can such a person do any of the claimant's past work?

R. 86. The VE responded that such a person could not perform the security guard or store's laborer positions. R. 86. However, the VE confirmed that there were multiple jobs in the national economy such a hypothetical individual could perform, which were all sedentary positions with at least 25,000 jobs available nationally: assembler, stuffer, patcher, and document preparer. R. 86. The VE testified that those four jobs permitted breaks of 15 minutes in the morning and afternoon and a lunch break of 30 minutes. R. 86-87. The VE opined that the jobs, however, could not "be performed sitting or standing at will" because "the sedentary, unskilled occupation[s] are structured so that a person ordinarily needs to be sitting at a work station to be productive and to remain on task." R. 87. The VE also opined that if the person given in the hypothetical would have to sit for an hour and then get up for one or two minutes and then resume sitting, the four jobs given would still exist because in that situation, the person would not be off task for more than 10 percent of the day, although the person would be impermissibly off task if he had to stand up for 10 to 15 minutes at a time. R. 87-88.

C. The Medical Evidence

Jones and the Commissioner have both provided summaries of the medical evidence in the record. See Pl. Mem. at 7-14; Def. Mem. at 2-17. The summaries are substantially consistent with each other. Additionally, the Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed Dec. 13, 2018 (Docket # 14), ¶ 5, and neither party has done so. Accordingly, the Court adopts both parties' summaries of the medical evidence as accurate and complete for purposes of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

D.  The ALJ's Decision

The ALJ denied Jones's DIB application on July 18, 2017.  R. 28.  First, the ALJ found that Jones last met the insured status requirements of the SSA through December 31, 2017. R. 17.  Then, following the five-step analysis set forth in SSA regulations, the ALJ found at step one that Jones had not engaged in "substantial gainful activity" during the period from his alleged onset date through the date of the decision.  R. 17.  At step two, the ALJ found that Jones suffers from "severe impairments" of "left hip osteoarthritis and avascular necrosis; left hip total arthroplasty; lumbar spondylosis; depression; anxiety; [and] pain disorder."  R. 17.

At step three, the ALJ found that none of Jones's impairments, singly or in combination, met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  R. 17-19.  The ALJ gave particular attention to Listings 1.02 (Major dysfunction of a joint), 1.04 (Disorders of the spine), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).  R. 17-19.  As to Listings 12.04 and 12.06, the ALJ considered whether the "paragraph B" criteria for mental disorders were satisfied.  R. 18-19.  The ALJ found that the criteria were not satisfied because Jones's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation," R. 19, in the "broad area[s] of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves," R. 18.  Furthermore, the ALJ considered whether the "paragraph C" criteria were satisfied that found that they were not because the record did not "establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life."  R. 19.

Having found that Jones did not meet or medically equal any of the Listings, the ALJ then addressed Jones's residual functional capacity ("RFC"). The ALJ found that Jones has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he can only "occasionally stoop, climb, and descend stairs; no climbing ladders, ropes, or scaffolds; no crouching, crawling, kneeling; no working at unprotected heights; he must use a cane to ambulate; he can understand, remember, and carry out simple work and adapt to routine workplace changes." R. 19-20. The ALJ noted that he made this assessment, "[a]s required by SSR 96-Sp, . . . based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments." R. 20. The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, . . . [and] considered opinion evidence" pursuant to SSA regulations. R. 20; see R. 20-27. The ALJ considered Jones's symptoms and noted that there were "several reasons why the claimant's allegations of the nature, intensity, persistence, limiting effects of those symptoms are not consistent with the medical signs, laboratory findings and/or other evidence of record which limit the capacity for work-related activities." R. 23.

Having determined Jones's RFC, the ALJ evaluated at step four whether Jones could perform any "past relevant work" as a security guard or "storage laborer," and concluded that he could not. R. 27. At step five, the ALJ considered Jones's RFC and his age, education, and work experience in determining that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 27. Thus, although the ALJ found that Jones's "ability to perform all or substantially all of the requirements of [a level of sedentary] work has been impeded by additional limitations," given all the evidence in the record, including

7

testimony from the VE, the ALJ found that Jones could perform the requirements of representative occupations such as assembler, stuffer, patcher, and document preparer.  R. 28. Accordingly, the ALJ concluded that Jones was not disabled as defined by the Act.  R. 28.

## II.  GOVERNING STANDARDS OF LAW

### A.  Scope of Judicial Review Under 42 U.S.C. § 405(g)

It is not a reviewing court's function "to determine de novo whether [a claimant] is disabled."  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).  Rather, a court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).  The "threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are

supported by substantial evidence." <u>Genier v. Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010) (per

curiam) (citation and internal quotation marks omitted).  Thus, "[i]f the reviewing court finds

substantial evidence to support the Commissioner's final decision, that decision must be upheld,

even if substantial evidence supporting the claimant's position also exists."  <u>Johnson v. Astrue</u>,

563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing <u>Alston v. Sullivan</u>, 904 F.2d 122, 126 (2d Cir.

1990)).  The Second Circuit has characterized the substantial evidence standard as "a very

deferential standard of review — even more so than the 'clearly erroneous' standard."  <u>Brault v.

Soc. Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam).  "The substantial

evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a

reasonable factfinder would <u>have to conclude otherwise</u>."  <u>Id.</u> (emphasis in original) (citations

and internal quotation marks omitted).  "The role of the reviewing court is therefore quite limited

and substantial deference is to be afforded the Commissioner's decision."  <u>Johnson</u>, 563 F. Supp.

2d at 454 (citations and internal quotation marks omitted).

    B.  <u>Standard Governing Evaluation of Disability Claims by the Agency</u>

      The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); <u>see</u> <u>id.</u>

§ 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

      To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past

relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III. DISCUSSION

Jones raises three grounds for why remand is necessary: (1) Jones's RFC as determined by the ALJ is not supported by substantial evidence because the ALJ failed to follow the treating physician rule, Pl. Mem. at 14-16; (2) the ALJ failed to properly analyze whether Jones's impairments met or medically equaled Listing 1.03, id. at 17; and (3) the ALJ erred in his credibility determination as to Jones's allegations, id. at 18. We discuss these issues next.

A. Whether The ALJ Properly Applied the "Treating Physician" Rule

While Jones purports to argue that the ALJ's RFC determination is not supported by substantial evidence, the crux of his argument is that the ALJ violated the treating physician rule by failing to provide "good reasons" for according less than controlling weight to the opinions of two of Jones's physicians: Dr. Andrew Brown and Dr. Ogulnick. See Pl. Mem. at 14-16.

1. The "Treating Physician" Rule

Under the so-called "treating physician" rule, in general, the ALJ must give "more weight to medical opinions" from a claimant's "treating source" — as defined in the regulations — when determining if the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2).[4]  Treating sources, which includes some professionals other than physicians, see 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2), "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The Second Circuit has summarized the deference that must be accorded the opinion of a  "treating source" as follows:

> Social Security Administration regulations, as well as our precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion.  First, the ALJ must decide whether the opinion is entitled to controlling weight.  "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  Burgess, 537 F.3d at 128 (third brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)).  Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it.  In doing so, it must "explicitly consider" the following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  Selian[, 708 F.3d at 418] (citing Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).  At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)). . . .  An ALJ's failure to "explicitly" apply the Burgess factors when assigning weight at step two is a procedural error.  Selian, 708 F.3d at 419-20.

Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019).  Accordingly, the Second Circuit has stated that it will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and [it] will continue remanding

---

[4]  Although the SSA has since revised its rules to eliminate the treating physician rule, the rule applies in this case  because the claim here was filed before March 27, 2017.  See, e.g, Conetta v. Berryhill, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

when [it] encounter[s] opinions from ALJ[s] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33; accord Estrella, 925 F.3d at 96; see also Greek, 802 F.3d at 375-77.

Nonetheless, the Commissioner is not required to give deference to a treating physician's opinion where the treating physician "issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32 (citation omitted). In fact, "the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted). Finally, a "slavish recitation of each and every [factor listed in 20 C.F.R. § 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear," Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32), and even where the ALJ fails to explicitly apply the "Burgess factors," a court may, after undertaking a "'searching review of the record,'" elect to affirm the decision if "'the substance of the treating physician rule was not traversed.'" Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).

### 2. Dr. Brown's Opinion

Jones argues that the ALJ violated the treating physician rule by failing to provide "good reasons" for according less than controlling weight to Dr. Brown's opinion that Jones could perform only part-time work. Pl. Mem. at 15-16. Specifically, Jones points to Dr. Brown's opinions stating that Jones was significantly restricted in his ability to lift, carry, push, pull, sit, stand, walk, climb, kneel, bend, stoop, and squat. Pl. Reply at 2. He also maintains that Dr.

Brown's opinions were "not inconsistent" with the opinions of other physicians. Pl. Mem. at 15. Jones concedes as he must, <u>see</u> Pl. Reply at 2, that Dr. Brown opined that Jones could work 5-6 hours a day for 5 days a week, R. 757-58.

The ALJ discussed Dr. Brown's opinions regarding Jones's purported limitations, but found that they were often "vague statements that the claimant is totally incapacitated and 100 percent disabled" and "poorly supported." R. 24-25. Specifically, the ALJ explained that Dr. Brown's opinions were not supported by those of Dr. Marwin and various other medical examiners, that Jones himself reported that his medications helped improved his pain symptoms, and that there was no indication from the record that Jones was incapable of working an eight-hour day with certain restrictions. R. 24-25. Thus, the ALJ gave Dr. Brown's opinions some or little weight. <u>See</u> R. 24-25.

We find that the ALJ did not err in according less than controlling weight to Dr. Brown's opinions because they are inconsistent with the record evidence. To start, there is no question that Dr. Brown opined on multiple occasions that Jones was either partially or totally disabled. <u>See</u> R. 350 ("Patient is totally disabled.") (December 2012), 591 (noting that Jones was "100%" impaired) (May 2013), 1030 ("[A]t this time I do not believe the patient could work a 40 hour week.") (February 2015). However, the ALJ could properly discount or accord little weight to these opinions. <u>See</u> <u>Snell</u>, 177 F.3d at 133 ("[S]ome kinds of findings — including the ultimate finding of whether a claimant is disabled and cannot work — are 'reserved to the Commissioner'") (quoting 20 C.F.R. § 404.1527); <u>see</u>, <u>e.g.</u>, <u>Wright v. Berryhill</u>, 687 F. App'x 45, 48 (2d Cir. 2017) (summary order). This is because SSA "regulations specify that the ultimate conclusion of whether an individual is 'disabled' or 'unable to work' is reserved to the Commissioner and conclusory opinions by others are entitled to no particular weight." <u>Nunez v.</u>

Astrue, 2013 WL 3753421, at *11 (S.D.N.Y. July 17, 2013) (citations omitted); accord Tucker v. Comm'r of Soc. Sec., 2019 WL 3321912, at *4 (W.D.N.Y. July 23, 2019). Thus, Dr. Brown's opinions that Jones was either incapacitated, "100%" disabled, or could not work 40 hours per week due to a partial disability could be discounted by the ALJ, or given no particular weight. Certainly, the ALJ was not required to give any conclusory opinions "controlling weight."

In addition, there is substantial evidence showing that Dr. Brown's opinions as to Jones's limitations were not entitled to controlling weight because other medical sources indicated that Jones could perform full-time work and that he was managing his pain symptoms with treatment. In December 2012, orthopedic surgeon Dr. Marc Berezin opined that although Jones could not return to his "regular job," he could perform "sedentary activity." R. 959. In August 2013, Dr. Berezin noted Jones had a "marked degree of disability" but also noted Jones's prognosis was "fair to good." R. 783. In September 2016, Dr. Berezin acknowledged reports that found "full range of motion of the left hip and no evidence of issues directly related to the left hip." R. 1250. Treating physician Dr. Marwin noted in February 2014 that Jones had a full range of motion "without pain" and that the hip replacement was "stable." R. 496. Dr. Marwin also found full range of motion without pain in March 2015. R. 1332. Dr. Steven Weinstein, board certified in physical medicine and rehabilitation, noted in April 2014 that Jones was capable of performing sedentary work with certain restrictions. R. 776. And consultative examiner Dr. Rita Figueroa noted in April 2015 that Jones had full range of motion in his spine and upper extremities with stable joints, no sensory deficit, and full strength in his extremities. R. 1159-60.

Dr. Brown's own treatment notes reflected that Jones was not as impaired as Dr. Brown's opinions would suggest. For example, Dr. Brown noted in February 2015 that Jones could drive a car, do some light cooking, did not need assistance dressing himself, and could perform daily

activities such as brushing his teeth and combing his hair. R. 755. One of the latest follow up notes in the record documents that Dr. Marwin's January 2016 physical examination of Jones's left hip revealed "a well-healed wound" with "excellent" skin and a "[f]ull range of motion." R. 1288.

Jones argues that the ALJ fails to explain how Dr. Brown's opinion that Jones could only work part-time is inconsistent with certain opinions of other physicians. See Pl. Mem. at 15. However, the ALJ need not "'explicitly . . . reconcile every conflicting shred of medical testimony.'" Mongeur, 722 F.2d at 1040 (quoting Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981)); accord Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010). As to Jones's argument that the ALJ failed to provide "good reasons" for discounting the opinions of Dr. Brown, that argument fails because, as described above, the ALJ explicitly considered Dr. Brown's opinions but found them to be contrary to the record as a whole. Also, the ALJ could properly discount or accord little weight to Dr. Brown's opinions that Jones could only sit, for example, up to five percent of the work day, Pl. Reply at 2, because Dr. Brown's opinions limiting Jones in such a way were contradicted by the findings and opinions of other physicians, both treating and non-treating. See Snell, 177 F.3d at 133 ("the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given"). Finally, Jones lists several findings of Dr. Brown that he cites to support the proposition that the ALJ erred in failing to accord his opinions controlling weight. He notes that Dr. Brown found positive findings during physical examinations, decreased range of motion, atrophy, and antalgic gait. Pl. Reply at 2. However, the ALJ could properly conclude that even these symptoms would not impair Jones's ability to perform sedentary work beyond the limitations in the RFC found by the ALJ. Also, to the extent other evidence supports Dr. Brown's opinions, that does not mean the ALJ erred, because the

ALJ may weigh conflicting medical evidence. <u>Johnson</u>, 563 F. Supp. 2d at 454 ("If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."); <u>see also</u> <u>Veino</u>, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

### 3. Dr. Ogulnick's Opinion

Jones argues that the ALJ violated the treating physician rule by failing to set forth "good reasons" for rejecting the opinion of Dr. Ogulnick. Pl. Mem. at 16. While Jones's moving brief does not specify which opinions Jones is referring to, Jones's reply brief refers to Dr. Ogulnick's "assessment that the plaintiff had marked and extreme limitations" resulting from Jones's depression. Pl. Reply at 3. The ALJ considered Dr. Ogulnick's opinion that Jones was "markedly limited in understanding and memory, markedly to extremely limited in concentration and persistence, moderately to markedly limited in social interaction, [and] moderately to markedly limited in adaptability," R. 26 (citing R. 1345-52), and gave the opinion "very little weight," R. 26. Thus, we assume Jones argues that the ALJ improperly accorded very little weight to this opinion.

The ALJ stated that he accorded this opinion "very little weight" because Dr. Ogulnick's "own progress notes lack any mental status examinations to support these limitations, and the clinical findings of [other physicians] show that the claimant is capable of greater mental work activities than opined." R. 26. Furthermore, the ALJ noted that "[d]espite his depressed and anxious moods, the claimant has maintained fair to good concentration, memory, thought process, and good judgment and insight." R. 26. For the following reasons, we find that the ALJ did not err in according less than controlling weight to Dr. Ogulnick's opinion because it

was contradicted by record evidence as well as Jones's own testimony regarding his activities of daily living.[5]

Substantial evidence supports the ALJ's decision to accord less than controlling weight to Dr. Ogulnick's opinion. First, as to understanding and memory, the record does not show significant limitations. Multiple physicians found that Jones's memory was largely intact. R. 767 (February 2015 — "Immediate, short-term, and long-term memory appeared intact on gross examination."), 1338 (same in October 2016), 1154 (April 2015 — noting that although Jones's memory was "[i]mpaired due to pain," he "recalled 3 out of 3 objects immediately" and "repeated 4 digits forward and 3 digits backward"); see also R. 469 ("No previous history of memory lapses or loss" noted in September 2013). Also, Jones's ability to understand was found by consultative examiner Dr. Leslie Helprin to be at most slightly impaired in April 2015. R. 1155 (Jones "evidences no limitations in ability to follow and understand simple directions and instructions, nor to cognitively perform simple and complex tasks independently."). As the ALJ observed, Jones, "[d]uring the independent medical examinations, . . . demonstrated normal mental processing speed, logical, coherent, and appropriately goal-directed thought process, an[d] average intelligence." R. 18.

Second, as to concentration and persistence, the record shows Jones's abilities were not markedly or extremely limited. See R. 767 ("Attention and concentration were sound throughout the examination" in February 2015), 1338 (same in October 2016), 780 (concentration and attention are "good to fair" in May 2013), 1155 (in April 2015, Jones

---

[5] We reject Jones's argument that the ALJ "did not recognize that Dr. Ogulnick is a psychology specialist and did not recognize the length of treatment and relationship he had with the plaintiff." Pl. Mem. at 16. An ALJ need not advert to every one of the Burgess factors, Atwater, 512 F. App'x at 70, and the ALJ certainly was aware that Dr. Ogulnick was a treating psychologist and cited to the records of Jones's treatment. See R. 22, 26.

"evidences very mild limitations in ability to maintain attention and concentration").  Dr. Helprin also observed that Jones was able to "count from 1 to 10 forward and backwards, do simple calculations, and serial 3s, except the last number."  R. 1154.

Third, the record suggests that Jones's abilities regarding social interactions were not as limited as Dr. Ogulnick expressed.  Jones himself testified to being able to take his daughter to school and spend time with her, R. 72, 78, and also indicated that he is able to do some shopping, R. 81, which indicates an ability to engage with others.  See Rivera v. Colvin, 2015 WL 9591539, at *19 (S.D.N.Y. Dec. 18, 2015) ("reported activities of daily living, which included shopping, cleaning, [and] caring for her school-aged son including helping him with his homework . . . contradicted [claimant's] claims of disabling psychological problems") (citing cases).  There is also substantial medical evidence indicating that Jones was not greatly impaired in his social interactions.  See R. 99 (agency specialist noting that Jones has "good family relationships"), 767 (Jones "reports a range of social interests, relationships, and activities that are consistent with his age, level of education, and cultural background," and "describes relationships with family and friends as generally close and supportive"), 1338 (same in October 2016), 1155 (Jones "reports as 'good' relationships with his mother and daughter," and reported hobbies and interests of "playing basketball and baseball").  Reports also reflect that Jones made good eye contact and had an appropriate demeanor during examinations from 2013 to 2016. R. 767, 780, 1339.  Finally, regarding adaptability, the record supports the ALJ's finding that the evidence shows at most mild limitations.  R. 19.  For instance, Dr. Figueroa found during her examination that Jones was able to shower, bathe, and dress himself.  R. 1159.  Dr. Helprin noted that Jones himself stated that he can dress, bathe, and groom himself, and was able to drive himself certain places even though he could not use public transportation.  R. 1155.  The ALJ

could properly rely on this evidence to accord less than controlling weight to the opinion that Jones has moderate to marked limitations in social functioning. Moreover, even considering the evidence suggesting some difficulties in social functioning, the ALJ is still entitled to "resolve any conflicts in the record" as to those facts. Game v. Berryhill, 2017 WL 1373176, at *4 (W.D.N.Y. Apr. 17, 2017) (citing Veino, 312 F.3d at 588) (additional citation omitted).

While Jones emphasizes that Dr. Ogulnick opined that Jones would be off-task for more than 15-20 percent of the workday, Pl. Reply at 3, the ALJ could properly reject this opinion because Dr. Ogulnick did not "provide specific functional assessments" and, as already explained, the opinion was "poorly supported by the record." R. 26.

In sum, the ALJ did not err in giving "very little weight" to the opinion that Jones had moderate, marked, or extreme limitations in the functional categories as just described, because the record shows at most mild or moderate limitations in those areas.

B. Whether the ALJ Properly Considered the Listings

Jones next argues that the ALJ erred by not explicitly reviewing whether Jones's impairments met or medically equaled Listing 1.03 and "whether [Jones] had an inability to ambulate effectively as defined in [Listing] 1.00B2b." Pl. Mem. at 17.

At step three in the sequential analysis, the ALJ determines if the claimant suffers from a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet his burden at this step, Jones must "meet all of the specified medical criteria [in the listing]. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (footnote, citations, and emphasis omitted); see also 20 C.F.R. §§ 404.1525(c)(3), 404.1529(d)(2)-(3); accord Solis v. Berryhill, 692 F. App'x 46, 48 (2d Cir. 2017) (summary order); Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Human

_Servs._, 360 F. App'x 240, 243 (2d Cir. 2010) (summary order); <u>Wood v. Colvin</u>, 987 F. Supp. 2d

180, 192 (N.D.N.Y. 2013).  To show that he meets the criteria, Jones "must offer medical

findings equal in severity to all requirements, which findings must be supported by medically

acceptable clinical and laboratory diagnostic techniques."  <u>Knight v. Astrue</u>, 32 F. Supp. 3d 210,

218 (N.D.N.Y. 2012) (citing 20 C.F.R. § 416.926(b)).

Listing 1.03 pertains to: "Reconstructive surgery or surgical arthrodesis of a major

weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to

effective ambulation did not occur, or is not expected to occur, within 12 months of onset."  20

C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.03.  Section 1.00B2b, in turn, provide's the SSA's

definition for "ambulating effectively."  According to the regulation:

> (1) . . . Inability to ambulate effectively means an extreme limitation of the ability
> to walk; i.e., an impairment(s) that interferes very seriously with the individual's
> ability to independently initiate, sustain, or complete activities.  Ineffective
> ambulation is defined generally as having insufficient lower extremity
> functioning . . . to permit independent ambulation without the use of a hand-held
> assistive device(s) that limits the functioning of both upper extremities.
>
> (2) To ambulate effectively, individuals must be capable of sustaining a
> reasonable walking pace over a sufficient distance to be able to carry out
> activities of daily living.  They must have the ability to travel without companion
> assistance to and from a place of employment or school.  Therefore, examples of
> ineffective ambulation include, but are not limited to, the inability to walk
> without the use of a walker, two crutches or two canes, the inability to walk a
> block at a reasonable pace on rough or uneven surfaces, the inability to use
> standard public transportation, the inability to carry out routine ambulatory
> activities, such as shopping and banking, and the inability to climb a few steps at
> a reasonable pace with the use of a single hand rail.  The ability to walk
> independently about one's home without the use of assistive devices does not, in
> and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B2b(1)-(2).

It is well-established that an ALJ need not explicitly discuss every Listing in his written

opinion, and there is no error in failing to discuss a particular Listing when substantial evidence

indicates a claimant did not satisfy the Listing.  See, e.g., Cooper o/b/o N.A. C. v. Comm'r of Soc. Sec., 2019 WL 925913, at *2 (W.D.N.Y. Feb. 26, 2019) ("[T]he ALJ's failure to discuss a specific Listing at step three is not reversible error so long as the Court can look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination [to reject a Listing] was supported by substantial evidence.") (citation and internal quotation marks omitted); Ovitt v. Colvin, 2014 WL 1806995, at *5 (N.D.N.Y. May 7, 2014) ("[T]he ALJ's failure to discuss a listing is not reversible error if substantial evidence in the record indicates that plaintiff did not satisfy the listing.") (citation and internal quotation marks omitted); Brown ex rel. S.W. v. Astrue, 2008 WL 3200246, at *12 (N.D.N.Y. Aug. 5, 2008) ("Although it is preferable that the ALJ address a specific Listing, failure to do so is not reversible error if the record supports the overall conclusion.") (citations omitted).  Here, it is clear from the record that Listing 1.03 was not met or medically equaled.  This is because the regulation defines "ineffective ambulation" as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B2b(1) (emphasis added).  While there is ample evidence from treating and non-treating sources that Jones uses a cane, which clearly limits Jones's functioning of one upper extremity, there is no evidence in the record that Jones used or needed a walker or some other device that limited the functioning of both upper extremities.  See, e.g., R. 464 (Jones "still requires a cane to ambulate" in September 2013), 513 ("Ambulates with the assistance of a cane."), 955 ("The examinee ambulates with a cane held in his left hand.") (March 2012), 958 ("The examinee ambulates with a cane held in his right hand.") (December 2012), 1048 ("Patient ambulates with the assistance of a cane" in March 2015); see also R. 1068, 1090, 1103, 1133, 1173, 1177, 1233, 1250, 1298,

1328, 1365.  Indeed, some evidence suggests that Jones could ambulate even without a cane.

R. 793 ("[Jones] is able to ambulate without his straight cane but demonstrates decreased

weight-bearing on the left lower extremity.") (December 2013), 811 ("[Jones] is able to

ambulate without his walking stick.") (July 2014).[6]  Thus, because Jones cannot meet all the

criteria for Listing 1.03, the ALJ did not err in making his Listing determination.

     C.  <u>Whether the ALJ Erred in his Credibility Determination</u>

     Finally, Jones argues the ALJ erred in determining that Jones's allegations of pain and

disabling symptoms were not credible.  Pl. Mem. at 18; Pl. Reply at 4-5.  The ALJ, after

consideration of the evidence, found that Jones's "medically determinable impairments could

reasonably be expected to produce [his] alleged symptoms," but that his "statements concerning

the intensity, persistence and limiting effects of these symptoms are not entirely consistent with

the medical evidence and other evidence in the record" for the reasons explained in the ALJ's

decision.  R. 20.  In making that determination, the ALJ relied on a number of items in the record

including the fact that Jones "report[ed] searching for a wide range of work during a period he

alleges he was completely disabled."  R. 23.  Jones argues that the ALJ erred because he failed to

mention that Jones made clear through his hearing testimony that "he was only looking for part-

time work and only looking for work within his restrictions as he was required to by the

---

     [6]  The plaintiff in <u>Perez v. Berryhill</u>, 2019 WL 1324949 (E.D.N.Y. Mar. 25, 2019), made
an argument similar to Jones's.  In <u>Perez</u>, the plaintiff argued that the ALJ erred at step three
because the record showed that Listing 1.03 was met or medically equaled.  <u>Id.</u> at *3.  The court
rejected the argument, reasoning that "[e]ven if the other criteria of Listing[] . . . 1.03 was met,
there is no evidence in the record demonstrating Plaintiff's 'inability to ambulate effectively' at
any time," as "'[i]neffective ambulation is defined generally as having insufficient lower
extremity functioning to permit independent ambulation without the use of a hand-held assistive
device(s) that limits the functioning of <u>both</u> upper extremities.'"  <u>Id.</u> at *4 (quoting 20 C.F.R.
Part 404, Subpt. P, App. 1, Listing 1.00(B)(2)(b)) (emphasis in original).  In <u>Perez</u>, as in Jones's
case, "[t]here [was] no evidence that Plaintiff required an assistive device that limited the use of
both arms."  <u>Id.</u>

Worker's Compensation board." Pl. Mem. at 18. Jones also argues that his credibility is generally supported by the record evidence. Pl. Reply at 4-5.

"It is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citing Perales, 402 U.S. at 399) (additional citations omitted). Thus, the ALJ, "after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility . . . may decide to discredit the claimant's subjective estimation of the degree of impairment." Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999) (summarizing the holding of and citing with approval Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y. 1985)); accord Saenz v. Berryhill, 2017 WL 1944158, at *10 (S.D.N.Y. May 10, 2017). "If the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal citations and additional citations omitted); accord Them v. Colvin, 2015 WL 10635499, at *13 (S.D.N.Y. Dec. 22, 2015) (upholding ALJ's credibility determination as supported by the record); Vargas v. Astrue, 2011 WL 2946371, at *15 (S.D.N.Y. July 20, 2011) (same); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). However, to the extent that an ALJ's credibility finding is not supported by substantial evidence in the record, it should not be upheld. See, e.g., Cardillo v. Colvin, 2017 WL 1274181, at *12 (N.D.N.Y. Mar. 24, 2017) ("[A]n ALJ's decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record . . . .'") (quoting Osorio v. Barnhart, 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006) (citation omitted)). Here, because substantial evidence

supports the ALJ's credibility determination, it must be upheld.

The ALJ concluded that Jones's symptoms and alleged limitations were not consistent with the record evidence. R. 23. We agree and conclude that medical and opinion evidence supports the ALJ's conclusion that Jones's symptoms are not as severe, persistent, or limiting as he has alleged. For instance, Jones "stated that he has difficulty focusing and concentrating on tasks due to pain and his depression." R. 20. But, as already discussed, there was substantial evidence indicating that Jones's ability to concentrate was not so significantly limited. R. 767 ("Attention and concentration were sound throughout the examination" in February 2015), 1338 (same in October 2016), 780 (Concentration and attention are "good to fair" in May 2013), 1155 (in April 2015, Jones "evidences very mild limitations in ability to maintain attention and concentration"). Indeed, as recent as April 2015, Dr. Helprin observed that Jones was able to "count from 1 to 10 forward and backwards, do simple calculations, and serial 3s, except the last number." R. 1154. Additionally, while Jones stated that he used a cane to prevent falls, walked slow even on flat surfaces, and avoided using stairs, R. 20, treating and non-treating physicians found Jones to have a generally positive prognosis with full range of motion in his hip and back, see, e.g., R. 496 (treating physician Dr. Marwin noting in February 2014 that Jones had a full range of motion "without pain" and that the hip replacement was "stable"), 538 ("Back ROM is normal."), 1159-60 (Dr. Figueroa noting in April 2015 that Jones had a full range of motion in his spine and upper extremities with stable joints, no sensory deficit, and full strength in his extremities), 1250 (Dr. Berezin acknowledging reports that found "full range of motion of the left hip and no evidence of issues directly related to the left hip"). Also, it was noticed twice that Jones displayed a normal posture — once by Dr. Enrique Sanz of Orthopedics & Sports Medicine, P.C. in November 2012, R. 308-09, and once by Dr. Helprin in April 2015, R. 1154.

Further, various examinations noted full or "good" motor strength, R. 309, 324, 539, 938, 951, 1160, normal affect and sensation, R. 538, 938, 1197, and no muscle atrophy, R. 775, 978, 1160. As early as July 2013, treating physician Dr. Marwin even noted that Jones was "doing well . . . following the left total hip replacement," and opined that he could "return to normal activities." R. 460. Jones himself indicated more than once that he even does some light exercise at home. R. 756 (February 2015), 810 (July 2014), 1285 (May 2016).

Even though the ALJ did not explicitly mention each piece of evidence described above in making his credibility determination, the ALJ cited record evidence in making his decision, and substantial evidence supports the ALJ's findings. Thus, we must uphold the ALJ's decision. See Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) ("While it is 'not sufficient for the [ALJ] to make a single, conclusory statement that' the claimant is not credible . . . , remand is not required where 'the evidence of record permits us to glean the rationale of an ALJ's decision.'") (quoting Mongeur, 722 F.2d at 1040); see, e.g., Guerrero v. Colvin, 2016 WL 5468330, at *21-22 (S.D.N.Y. Sept. 29, 2016); see also Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) ("We have no reason to second-guess [a] credibility finding . . . where the ALJ identified specific record-based reasons for his ruling.").

Finally, as stated above, noting that Jones reported "searching for a wide range of work" was only one factor the ALJ relied upon in making his credibility determination, R. 23, which was proper, see Razo v. Astrue, 2008 WL 2971670, at *6 (S.D.N.Y. July 31, 2008) ("A claimant's work history is not dispositive[] . . . in assessing credibility. That history is but one of many factors the ALJ must consider in weighing the claimant's credibility.") (citations omitted). However, even granting that the ALJ erred in assuming Jones was looking for full-time work, that error would be harmless insofar as the record as a whole provides ample evidence to support

the ALJ's credibility determination as described above.  See, e.g., Sickles v. Colvin, 2014 WL 795978, at *12 (N.D.N.Y. Feb. 27, 2014) ("[W]here the ALJ has utilized an unwarranted assumption, formulated from statements of record, in his credibility determination, remand will not follow when his determination is supported by other substantial evidence in the record.") (citation omitted); Messina v. Astrue, 2009 WL 4930811, at *7 (S.D.N.Y. Dec. 21, 2009) (ALJ's failure to properly "consider [plaintiff]'s work record as a factor in his credibility determination" was "harmless error, as substantial evidence in the record supports the ALJ's credibility assessment."); Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (an "ALJ's unwarranted assumption" regarding a plaintiff's testimony does not necessarily mean "substantial evidence did not support the ALJ's finding[]" regarding the plaintiff's overall credibility) (citation omitted); Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 82 n.26 (N.D.N.Y. 2005) (noting that, although the "the ALJ misstated the record with respect to [plaintiff's] ability" to do housework, "the ALJ's incorrect rendition of [plaintiff]'s ability to perform those activities amounts to nothing more than harmless error where, as here, his credibility assessment is amply supported by other substantial evidence") (citations omitted); see also Impala v. Astrue, 2011 WL 2456356, at *5 (D. Conn. June 15, 2011) ("[T]o the extent [the ALJ's] credibility assessment was improper, it was harmless because it did not affect the outcome."), aff'd, 477 F. App'x 856 (2d Cir. 2012).

Jones reasons that he was not "exaggerating" his symptoms but was "amplifying" them. He asserts that "[s]ymptom amplification is not the same as symptom exaggeration.  It is plaintiffs perception of his abilities and pain."  Pl. Reply at 5.  Thus, Jones argues, he was "likely amplifying symptoms due to . . . severe and chronic depression that is well-documented in the record."  Id.  This argument, however, does not suggest that the ALJ erred in making his

credibility determination.  Moreover, Jones cites no evidence to support a connection between depression and the amplification of symptoms.

In sum, the ALJ did not err in making his credibility determination.

IV. <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket # 21) is granted and Jones's motion (Docket # 19) is denied.

SO ORDERED.

Dated: New York, New York
      November 12, 2019

GABRIEL W. GORENSTEIN
United States Magistrate Judge